UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

ERIC GREEN,

                **Petitioner,**

     - against -

PATRICIA LEGONEY, Superintendent of
Washington Correctional Facility,

                **Respondent.**

------------------------------------------------------X

**OPINION AND ORDER**

**09 Civ. 0747 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

        Petitioner Eric Green brings this pro se habeas corpus petition

pursuant to section 2254 of Title 28 of the United States Code challenging his state

court conviction following a jury trial in New York State Supreme Court, New

York County.[1]  Petitioner was convicted of three counts of Rape in the First

Degree[2] and one count of Sodomy in the Third Degree.[3]  Petitioner was sentenced

to nine years of imprisonment, followed by five years of post-release supervision.[4]

---

[1]      *See* Petition for a Writ of Habeas Corpus ("Petition") at 1.

[2]      *See* New York Penal Law ("NYPL") § 130.35[1].

[3]      *See id.* § 130.40[3].

[4]      *See* Petition at 1.

On January 27, 2009,[5] petitioner filed the instant Petition, challenging his conviction on the following grounds: (1) the trial court's instruction to the jury on the charge of forcible rape violated petitioner's right to a jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (2) the prosecutor's summation deprived petitioner of a fair trial; (3) ineffective assistance of trial counsel; and (4) petitioner's sentence was harsh and excessive under the Eighth Amendment to the United States Constitution.  For the following reasons, the Petition is denied.

## II.   BACKGROUND

### A.   The Offending Conduct

#### 1.   The Events of August 12, 2003

---

[5]   Petitioner's conviction became final on March 17, 2008, the date the time to seek a writ of certiorari to the Supreme Court expired.  *See* Sup. Ct. R. 13; *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001) (holding that section 2254's limitations periods does not begin to run until direct review in the state court system is complete and either the certiorari proceedings or the time for seeking a writ of certiorari has expired.)  The instant Petition was timely filed on January 27, 2009.  *See* 28 U.S.C. § 2244(d)(1)(A) (creating a one year statute of limitations for habeas cases challenging state court judgments, running from the date on which the judgment became final).

In early July 2003, "NS"[6] met petitioner at a day care center in Manhattan at which they were both employed.[7]   After becoming acquainted, they had consensual sexual intercourse in early August 2003.[8]   About one week later, on August 12, 2003, NS accompanied petitioner and a co-worker, Tyrell, to the roof of an apartment building, where petitioner suggested that NS have sexual intercourse with Tyrell.  When NS refused, petitioner choked her.[9]

Subsequently, NS accompanied Tyrell and petitioner downstairs to the apartment of a friend of petitioner's, Charles Hickman.[10]  NS, thinking that she was going to have sex with petitioner, immediately entered Hickman's bedroom.  Once she was there, though, petitioner demanded that she have sex with Tyrell.[11]  A

---

[6]      This Opinion will refer to the victim, a minor at the time of these events, by her initials.

[7]      *See* Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp. Mem.") at 5 (citing Trial Transcript ("Tr.") 5-9).  This Opinion cites to the parties' briefing of the trial transcript, rather than the transcript itself, because the transcript is under seal and the facts are undisputed.

[8]      *See id.* (citing Tr. 9-14; 188; 190).

[9]      *See id*. (citing Tr. 19-24; 26).

[10]      *See id.* at 6 (citing Tr. 24).

[11]      *See id.* (citing Tr. 30).

short time later, Hickman entered the room, and NS had sexual intercourse with

him in an effort to gratify petitioner.[12]

NS, Tyrell, and Hickman then accompanied petitioner to his

grandmother's house, where they met petitioner's older brother, Earl Green.[13]

There, Earl Green demanded that NS perform oral sex on him, and threatened that

if she refused, he would "fuck her up."[14]  NS, frightened, complied. Afterwards,

she went home.[15]

### 2.      The Events of August 13, 2003

The next day, NS went to petitioner's apartment, where she and

petitioner had consensual sexual intercourse in petitioner's bedroom.[16]  Soon after,

NS overheard petitioner on the telephone inviting other people over.  This made

NS angry, because petitioner had promised that they would be alone.[17]  Petitioner

demanded oral sex, but NS refused.  Then, petitioner pushed NS off the bed and

forced his penis into her mouth.  While so engaged, petitioner pressed the dull side

---

[12]      *See id*. (citing Tr. 31-33).

[13]      *See id*. (citing Tr. 34-35).

[14]      *See id*. (citing Tr. 36-40).

[15]      *See id*. (citing Tr. 36-40; 43).

[16]      *See id*. (citing Tr. 49).

[17]      *See id*. at 6-7 (citing Tr. 44-45; 54-55).

of a knife against NS's face and said that he would kill her if she "[told] anybody."[18]

Afterwards, Hickman entered the bedroom, and petitioner asked NS if she would perform sexual favors on Hickman if Hickman performed oral sex on her.[19] NS began crying, because she wanted to go home, and got dressed. Petitioner and Hickman then left the room.[20] A few minutes later, two men entered the room: a man later identified as Darmel Cox, and a man identified only by his nickname, "Vad."[21]

After Cox and Vad arrived, petitioner returned to the bedroom, where NS remained, removed NS's pants, and threatened to throw them out the window if NS did not have sex with Cox and Vad.[22] Vad then raped NS. When Vad finished, Cox then raped NS.[23] Shortly afterwards, petitioner also raped NS.[24] Petitioner then allowed NS to leave, but not before warning her that if she told anyone, he

---

[18]     *Id.* at 7 (citing Tr. 59-61; 64-65).

[19]     *See id.* (citing Tr. 73; 76).

[20]     *See id.* (citing Tr. 76).

[21]     *See id.* (citing Tr. 73; 76-77; 215).

[22]     *See id.* (citing 79-81).

[23]     *See id.* (citing Tr. 84-87).

[24]     *See id.* at 7-8 (citing Tr. 86; 88-92; 101; 104).

would "do it to [her] all over again."[25]  NS then put on her clothes and took the

subway home.[26]

On April 4, 2005, petitioner was convicted by a jury of three counts of... Once home, NS falsely told her mother that a man on the subway had

forced her back to his apartment at knife-point and raped her there.[27]  NS's parents

took her to the emergency room at Montefiore Hospital, where she repeated her

story to police and medical personnel.[28]  Later that day, police officers told NS that

there were video cameras on the subway platform, and NS informed them that

petitioner was the one who had raped her.[29]

### B.   Procedural History

On April 4, 2005, petitioner was convicted by a jury of three counts of

first degree rape and one count of sodomy in the third degree.[30]  Petitioner,

represented by new counsel, appealed his conviction to the Appellate Division,

First Department, raising the following claims: (1) the court's instruction to the

jury on the first degree rape charge that the "forcible compulsion" element of first

---

[25]      *See id.* (citing Tr. 178).

[26]      *See id.* (citing Tr. 107-108; 179).

[27]      *See id.* (citing Tr. 113-114).

[28]      *See id.* (citing Tr. 116-118; 219-220; 255).

[29]      *See id.* (citing Tr. 120-121; 222-223).

[30]      *See id*. at 9 (citing Tr. 563-566.)

degree rape included kidnapping, which was defined, in part, as the confinement of an acquiescent person under the age of 16, deprived petitioner of his right to a jury trial; (2) the prosecutor's comments during summation, bolstering the victim's testimony and asking the jury to picture themselves in her place, deprived petitioner of his right to a fair trial; (3) the petitioner's sentence was excessive and unduly harsh; and (4) the Clerk of Court improperly added a surcharge and fees to petitioner's sentence.

On September 8, 2007, the Appellate Division unanimously affirmed petitioner's conviction.[31]  The court found that petitioner's claims regarding the court's charge and the prosecutor's summation were unpreserved, and that even if they were preserved, the court would have rejected them on the merits.[32]  As to the jury instruction, the Appellate Division stated that "[t]he court made it abundantly clear to the jury that defendant was charged with forcible rape, and there is no reasonable possibility that the jury could have been misled into believing that the victim's age satisfied the element of force."[33]  The Appellate Division also found no basis for reducing petitioner's sentence, and held his claim regarding fees to be

---

[31]    *See People v. Green*, 841 N.Y.S.2d 861 (1st Dep't 2007).

[32]    *See id*.

[33]    *Id*.

unavailing.[34]  On December 18, 2007, the New York Court of Appeals denied petitioner's motion for leave to appeal.[35]

## III.   LEGAL STANDARDS

### A.   Deferential Standard for Federal Habeas Review

This Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court may not grant a writ of habeas corpus to a prisoner in custody pursuant to the judgment of a state court with respect to any claim, unless the state court's adjudication on the merits of that claim: "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;"[36] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[37]

A state-court decision is contrary to clearly established federal law, as determined by the Supreme Court, in the following two instances:

---

[34]     *See id.*

[35]     *See People v. Green*, 850 N.Y.S.2d 394 (2007).

[36]     28 U.S.C. § 2254(d)(1).

[37]     *Id.* § 2254(d)(2).

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[38]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[39]

In order for a federal court to find a state court's application of Supreme Court precedent to be unreasonable, the state court's decision must have been more than incorrect or erroneous. Rather, "[t]he state court's application of

---

[38]   *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

[39]   *Id.* at 407.

clearly established law must be *objectively unreasonable*."[40]  This standard "'falls

somewhere between merely erroneous and unreasonable to all reasonable

jurists.'"[41]  While the test requires "'[s]ome increment of incorrectness beyond

error, . . . the increment need not be great; otherwise habeas relief would be limited

to state court decisions so far off the mark as to suggest judicial incompetence.'"[42]

Furthermore, section 2254(d) applies to a defendant's habeas petition even where

the state court order does not include an explanation of its reasoning.[43]

> Where a state court's decision is unaccompanied by an
> explanation, the habeas petitioner's burden still must be
> met by showing there was no reasonable basis for the state
> court to deny relief.  This is so whether or not the state
> court reveals which of the elements in a multipart claim it
> found insufficient, for [section] 2254(d) applies when a
> 'claim,' not a component of one, has been adjudicated.[44]

---

[40]  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added).  *Accord Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007));  *Williams*, 529 U.S. at 409;  *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[41]  *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

[42]  *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[43]  *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

[44]  *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[45]  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[46]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations.  Such determinations are presumed to be correct, and the burden falls on the petitioner to rebut them by clear and convincing evidence.[47]

### B.   Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[48]  In order to satisfy this exhaustion requirement, a prisoner

---

of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.")).

[45]   *See Harrington*, 131 S. Ct. at 784.

[46]   *Id.* at 784-85.

[47]   *See* 28 U.S.C. § 2254(e)(1).

[48]   *Id*. § 2254(b)(1)(A).

must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[49] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[50]  Fair presentation of a claim, for exhaustion purposes, includes petitioning for discretionary review in the state's highest appellate court.[51]

When a habeas petition under the AEDPA contains both exhausted and unexhausted claims, a district court  "can offer the petitioner 'the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims.'"[52] A district court may also deny a petition on the merits, even if it contains an unexhausted claim.[53]  Finally, in

---

[49]     *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[50]     *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[51]     *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). *Accord Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that in New York, exhaustion requires that a "criminal defendant . . . first appeal his or her conviction to the Appellate Division, and then . . . seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

[52]     *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

[53]     *See* 28 U.S.C. § 2254(b)(2).

-12-

limited circumstances, a district court may stay a mixed petition and hold it in abeyance until it has been properly presented to the state courts.[54]

### C.    Procedural Bar

Under the adequate and independent state ground doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar, federal habeas review is precluded.[55]  Even if the state court alternatively rules on the merits of the federal claim, federal habeas review is precluded if an adequate and independent state ground would bar the claim in state court.[56]  Federal habeas review of procedurally barred claims is foreclosed unless the prisoner can demonstrate either: (1) "'cause for the default and actual prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental miscarriage of justice.'"[57]  To show cause for a default, a prisoner must put forth

---

[54]    *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

[55]    *See Jones v. Duncan,* 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997)).

[56]    *See, e.g., Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis*, 188 F.3d 71, 77-82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996).

[57]    *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Epps v. Commissioner of Corr. Servs.*, 13 F.3d 615, 617-18 (2d Cir. 1994).

some objective factor, external to the defense, explaining why the claim was not previously raised.[58]  The Supreme Court has provided little guidance as to what constitutes "prejudice," but it can be inferred that prejudice is shown when the claim, if proven, would bear on the petitioner's guilt or punishment.[59]  The fundamental miscarriage of justice exception to the procedural bar rule is available only upon a showing of actual innocence.[60]  Finally, a habeas petitioner may not avoid the exhaustion requirement by waiting until federal habeas review to bring claims properly raised in state court.  While such claims are technically exhausted, if they would be procedurally barred on the state level, they are deemed exhausted and procedurally defaulted for the purposes of federal habeas review.[61]

### D.  Ineffective Assistance of Counsel Under *Strickland v. Washington*

---

[58]  *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[59]  *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes").

[60]  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[61]  *See Coleman*, 501 U.S. at 735 n. 1.  *Accord Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).

To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner "must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[62]  "To satisfy the first prong – the performance prong – the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"[63]  The inquiry under the performance prong is "contextual" and "asks whether defense counsel's actions were objectively reasonable considering all the circumstances."[64]  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[65]

---

[62]     *Wilson v. Mazzuca*, 570 F.3d 490, 501 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).  *Accord Smith v. Spisak*, 130 S. Ct. 676, 685 (2010).

[63]      *Wilson*, 570 F.3d at 502 (quoting *Strickland*, 466 U.S. at 687).

[64]     *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 688).

[65]     *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland,* 466 U.S. at 690).

In determining what constitutes objective reasonableness, courts look to "'[p]revailing norms of practice as reflected in American Bar Association standards.'"[66]  Attorney errors that fall below an objective standard of reasonableness "include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."[67]  "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[68]  "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[69]

To satisfy the second prong – the prejudice prong – a "defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[70]

---

[66]     *Purdy*, 208 F.3d at 44 (quoting *Strickland*, 466 U.S. at 688).

[67]     *Wilson*, 570 F.3d at 502 (citation omitted).

[68]     *Knowles*, 129 S. Ct. at 1420 (quoting *Strickland*, 466 U.S. at 689).

[69]     *Id.* (quoting *Strickland*, 466 U.S. at 688).

[70]     *Strickland*, 466 U.S. at 694 (emphasis added).

-16-

In assessing prejudice, courts review the record to determine the impact of the alleged ineffectiveness within the context of the entire trial.[71]   In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."[72]   Finally, a finding of lack of prejudice may precede, or preempt, the quality of representation inquiry.   The Supreme Court has stated:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.   In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.   The object of an ineffectiveness claim is not to grade counsel's performance.   If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.   Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[73]

---

[71]     *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264 (2010) ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695).

[72]     *Strickland*, 466 U.S. at 694.

[73]     *Id.* at 697.

Thus, if a court finds no prejudice, it need not engage in the often thorny inquiry regarding the adequacy of counsel's performance.

## IV.   DISCUSSION

### A.   Petitioner's Exhausted Claims

#### 1.   The Jury Charge Claim

Petitioner alleges that the trial court's jury instructions violated his constitutional right to a jury trial.  Specifically, Petitioner alleges that the court instructed the jury that first-degree rape requires a finding of "forcible compulsion."[74]  The court further instructed the jury that "forcible compulsion" includes placing a person in imminent fear of kidnapping.[75]  Finally, the court instructed the jury that kidnapping is defined as confining someone without their consent, either through physical force, intimidation, or deception, or by any means whatsoever, including acquiescence of the victim if the victim is a child less than sixteen years old.[76]  Petitioner argues that because NS was only fifteen years old at

---

[74]    *See* Memorandum of Law in Support of Habeas Petition ("Pet. Mem.") at 11.

[75]    *See id*.

[76]    *See id*.  *See also* Opp. Mem. at 33 (quoting Tr. 531.)

the time of the offending conduct, this instruction was tantamount to a directed verdict, depriving him of his constitutional right to a jury trial.[77]

The Appellate Division held that this claim was unpreserved.[78] New York's contemporaneous objection rule mandates that a challenge to a criminal court's ruling or instruction must be raised through a specific and timely objection in order to be preserved for appeal.[79] The rule is an adequate and independent rule of procedure[80] that petitioner violated by waiting until his trial was over to raise his objection to the jury charge. Accordingly, the Appellate Division's decision rests on an independent and adequate state ground barring federal habeas review.[81]

---

[77] *See* Pet. Mem. at 11.

[78] *See Green*, 841 N.Y.S.2d at 861.

[79] *See* New York Criminal Procedure Law ("CPL") § 470.05(2).

[80] *See Whitley v. Ercole*, 642 F.3d 278, 286–87 (2d Cir. 2011).

[81] *See Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000).

Petitioner does not allege that there is cause for his default,[82] nor has he made a factual showing that he is actually innocent.[83]  Because petitioner cannot satisfy either the cause and prejudice or actual innocence standard, the procedural bar is unexcused.  Consequently, there is no need to address whether petitioner's claim raises a valid question of federal constitutional rights, nor is there need to engage in harmless error analysis, although either inquiry would likely supply an independent basis for denying relief.  The claim is denied.

### 2.    The Summation Claim

Petitioner also alleges that two statements made by the prosecutor during her summation deprived him of his constitutional right to a fair trial.  *First*, Petitioner alleges that the prosecutor's statement that NS had consistently told the same story at several fora, including the District Attorney's office, improperly injected the prosecutor's personal beliefs about NS's veracity into the record.[84]

---

[82]    If petitioner intends to supply the "cause" through his *Strickland* claim, the effort is unavailing, because the *Strickland* claim is itself procedurally defaulted, as discussed below.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (stating that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted . . . .").

[83]    *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[84]    *See* Pet. Mem. at 16-17.

*Second*, Petitioner alleges that the prosecutor improperly inflamed the jury when she asked the jurors to picture themselves in NS's situation.[85]

The Appellate Division held that this claim, too, was unpreserved.[86] Petitioner acknowledges that he did not move for a mistrial at the close of summations.[87] Petitioner did raise a general objection to the prosecutor's statement that NS's testimony was consistent,[88] but a general objection is insufficiently specific to comply with New York's contemporaneous objection rule.[89] As such, this claim is also procedurally barred. Once more, petitioner does not attempt to show cause and prejudice, nor has he proven his actual innocence. The claim is denied.

### B.   Petitioner's Unexhausted Claims

####    1.   The Ineffective Assistance of Counsel Claim

---

[85]   *See id*. at 17.

[86]   *See Green*, 841 N.Y.S.2d at 861.

[87]   *See* Pet. Mem. at 18.

[88]   *See* Opp. Mem. at 27 (citing Tr. 474.)

[89]   *See People v. Rivera*, 73 N.Y.2d 941, 942 (1989) (holding that defendant's objection to prosecutor's summation was not properly preserved by defendant's general objection); *see also People v. Galloway*, 940 N.Y.S.2d 699, 702 n.2 (3d Dep't 2012) (collecting cases).

Petitioner next brings an ineffective assistance of trial counsel claim. The gravamen of this claim is that petitioner's trial counsel failed to lodge objections to the prosecutor's summation and the trial court's charge to the jury, and further failed to make a motion to dismiss at petitioner's request.[90] Two of the three bases for petitioner's *Strickland* claim rehash grounds for error he presented to the Appellate Division. However, this is the first time he has brought a claim under *Strickland*. This leads directly to the issue of whether the claim is subject to a state procedural bar. If so, it may be deemed exhausted and procedurally defaulted.[91]

Under New York law, attacks on a conviction that are based on errors found in the record must be raised on direct appeal, rather than through collateral proceedings.[92] Because petitioner's *Strickland* claim was reviewable based on the

---

[90]     *See* Pet. Mem. 20-21.

[91]     *See Coleman*, 501 U.S. at 735 n. 1.

[92]     *See Dunham v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002) ("In New York, a criminal defendant may not raise in a § 440 motion a claim that could have been raised on direct appeal."); CPL § 440.10(2)(C) (requiring courts to deny a motion to vacate the judgment where "sufficient facts appear on the record" for the claim to have been raised and decided on direct appeal). *See also People v. Morales*, No. 3676–99, 2010 WL 1664909, at *5 (Sup. Ct. N.Y. Co. Apr. 27, 2010) (stating that "[i]t is well-settled . . . that a defendant's claim is not a proper subject of a CPL 440.10 motion where it is based on the record and defendant could have raised it on direct appeal but failed to do so.").

trial court record, it should have been raised on direct appeal.  Counsel's failure to lodge objections to the prosecution's summation and the jury charge presents a "paradigmatic example of a trial record that plainly establishes the basis for an argument that counsel's performance was deficient and prejudicial," because "[c]ounsel's failure to object is preserved in the trial record . . . ."[93]  The trial transcript was also sufficiently developed to permit review of petitioner's contention that his counsel failed to make a motion to dismiss: the transcript shows that counsel made a motion to dismiss at the close of the evidence.[94]

Petitioner brought an appeal as of right, and his petition for discretionary review by the New York Court of Appeals was denied.[95]  New York does not permit collateral attack on a criminal conviction which the defendant unjustifiably failed to challenge on direct appeal.  Petitioner's *Strickland* claim is therefore subject to an adequate and independent state procedural bar, and, as a

---

[93]     *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).  *Accord Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (holding that trial counsel's failure to object to jury charge was not proper basis for a section 440 motion to vacate judgment).

[94]     *See* Opp. Mem. at 27 (citing Tr. 434.)

[95]     *See* New York Court Rules § 500.20(a)(2), CPL § 450.10(1).  *See also People v. Terry*, 845 N.Y.S.2d 145, 145 (3d Dep't 2007).

consequence, I deem it to be exhausted and procedurally defaulted for the purposes of federal habeas review.[96]

The holding of *Massaro v. United States* is not to the contrary.[97]  In *Massaro*, the Supreme Court held that, for the purposes of a habeas petition under section 2255, the failure to raise an ineffective assistance of counsel claim on direct appeal does not give rise to a procedural default.[98]  As the Second Circuit has recognized, *Massaro*'s holding was limited to proceedings initiated under section 2255.[99]  Comity and federalism, as well as the explicit exhaustion requirement found in section 2254, mandate the result that for the purposes of section 2254 proceedings, a petitioner may not side-step the state judicial system by waiting until his day in federal court to claim ineffective assistance of counsel.[100]

---

[96]    *Cf. Reyes*, 118 F.3d 136 at 139.

[97]    *Massaro v. United States*, 538 U.S. 500 (2003).

[98]    *See id.* at 508.

[99]    *See Sweet*, 353 F.3d at 140.

[100]    *See Murray,* 477 U.S. at 489 ("The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court 'to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.") (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)).

The remaining question is whether petitioner can meet either the cause and prejudice or the actual innocence standard with respect to this claim.  Once more, petitioner has not made any allegations explaining the cause for his default.  No objective, external factor prevented petitioner from raising his ineffective assistance claim on direct appeal.  Petitioner was represented by counsel during his direct appeal, which negates the likelihood that ineffective appellate counsel caused the default of petitioner's ineffective trial counsel claim.[101]  Appellate counsel's inadvertence in failing to raise an ineffective assistance of trial counsel claim does not constitute cause,[102] and petitioner offers no evidence of

---

[101]    In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (U.S. 2012), the Supreme Court held that when ineffective assistance of counsel claims must be raised in an initial review collateral proceeding, a procedural default of such claims does not bar federal habeas review in the face of either inadequate or absent appellate counsel. *Martinez* does not apply to the facts, for two reasons. *First*, *Martinez*'s holding is expressly limited to cases where *Strickland* claims may only be brought through initial review collateral proceedings. *See id*. at 1319.  Here, petitioner's claim could have been brought on direct appeal. *Second*, even if *Martinez* extended to *Strickland* claims brought on direct appeal, it would still be inapposite.  The holding of *Martinez* rests on the equitable ground that it is unfair to forever deny a defendant review of his ineffective assistance of trial counsel claim when he lacked the benefit of the legal development that effective appellate counsel could have provided. *See id*. at 1317-318.  Petitioner's claim, though, is record-based, and the underlying legal theory it presents was developed by able counsel during petitioner's appeal to the Appellate Division.

[102]    *See Murray*, 477 U.S. 478 at 488 (stating that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default").

inadvertence.  Indeed, it appears that petitioner is seeking to bypass the state

judicial process by repackaging his state appeal as an ineffective assistance of

counsel claim.  Exhaustion and procedural default, which have replaced the

deliberate bypass rule of *Fay v. Noia*,[103] were designed to prevent precisely this

sort of maneuver.  Because petitioner has offered no evidence of actual innocence,

he is likewise not entitled to the fundamental miscarriage of justice exception to

the procedural bar.[104]  Petitioner's procedural default on this claim is therefore not

excused, and the claim is denied.

### 2.      The Eighth Amendment Claim

Petitioner's final claim is that his sentence is excessive under the

Eighth Amendment.  Because this claim was never presented to the state courts, it

is unexhausted.  But because no state forum remains for this claim, is deemed

exhausted and procedurally barred.  However, in the interests of judicial economy,

I will dispose of this claim on the merits.[105]  "[I]t is well settled that '[n]o federal

---

[103]     *See Fay v. Noia*, 372 U.S. 391 (1963) ("We therefore hold that the federal
habeas judge may in his discretion deny relief to an applicant who has deliberately
by-passed the orderly procedure of the state courts and in so doing has forfeited his
state court remedies.").

[104]     *See Bousley*, 523 U.S. at 623.

[105]     *See Dunham v. Travis*, 313 F.3d 724, 729-730 (2d Cir. 2002) (discussing
*Lambrix v. Singletary*, 520 U.S. 518, 523 (1997)) (stating that "hurdling" the

-26-

constitutional issue is presented where . . . the sentence is within the range prescribed by state law.'"[106]  Petitioner's sentence is well within the range prescribed by state law.[107]  Therefore, his Eighth Amendment claim is denied.

## V.    CONCLUSION

For the foregoing reasons, the Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[108]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve encouragement to proceed further.'"[109]  Petitioner has made no such showing.  Accordingly, I decline

procedural bar is justified when the merits of a habeas claim are easily resolvable against the habeas petitioner.) *Accord* 28 U.S.C. § 2254(b)(2) (authorizing judges to deny mixed petitions on the merits).

[106]    *Ross v. Gavin*, Civ. No. 95-2448, 1996 WL 346669, at *1 (2d Cir. June 25, 1996) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)).

[107]    *See* NYPL § 70.00(2)(b) (setting the maximum term for a Class B felony, such as first degree rape, at twenty five years.)

[108]    28 U.S.C. § 2253(c)(2).

[109]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)).  *Accord*

-27-

to grant a COA.  The Clerk of the Court is directed to close this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:       New York, New York
             October 25, 2012

_____

*Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

-28-

**-Appearances-**

**Petitioner (Pro Se):**

Eric Green
DIN# 05-A-3275
Washington Correctional Facility
72 Lock 11 Lane, P.O. Box 180
Comstock, New York, 12821-0180


**For Respondent:**

Lisa Fleischmann
Lea L. La Ferlita
Assistant Attorneys General
120 Broadway, 22nd Floor
New York, New York, 10271
(212) 416-8620